*127 Opinion of the Court.
Samuel Williams having obtained a judgment in the Fayette circuit court, against John C. Buckner, issued his execution of capias ad satisfaciendum, to the County of Scott, where Buckner resided. After his apprehension, Buckner gave notice to the counsel of Williams, and before two justices of the peace of Scott county, delivered in his schedule, and took the oath of an insolvent debtor, and was thereupon discharged. This schedule the justices returned to the clerk’s office of the Fayette circuit court, from which the execution issued. A summons was then issued by the clerk to some garnishees named in the schedule as debtors to Buckner, which summons, after one of the garnishees had appeared and was sworn, was quashed by the court, and from that decision this appeal is prayed.
1. One of the grounds assumed for quashing the summons, is, that it did not appear that the schedule aforesaid, was rendered under the ca sa, issued at the suit of the appellant. In this we cannot concur with that court. It is true, the schedule itself, does not state under what execution it was rendered, nor is it necessary that it should. The justices however, returned it as attached to this execution, and the sheriff of Scott, *128 out of whose custody the justices discharged him, made return on the execution of the fact, that he took the oath and was discharged by them. The sheriff was the person to whom the warrant of the justices to bring up the body, must, by law, be directed. He must, of course, bring up the body, and receive and return the discharge of the justices, after his prisoner delivered his schedule and took the oath, and of course, he made a proper return of the manner in which he lost the custody of Buckner. Besides, the parol evidence is abundant in the record, to show the same fact. This ground, therefore, cannot be sustained.
The clerk’s office from which the execution issued, is the office to which such schedule ought to be returned.
2. Another ground sustained by that court, was, that the schedule was returned by the justices, to the clerk of the Fayette circuit court. The act of assembly directs that the schedule, received and subscribed before the justices, “ shall be lodged with the clerk of the court, for the information of the creditors of such prisoner.” In this direction, after the words “ clerk of the court,” the words " from whence the execution issued,” which occurs in other parts of the act, is omitted. But still, the definite article “ the clerk of the court” is used. Of course, a clerk, or any clerk or court, where the release takes place, cannot be intended. If any clerk would answer, the words would be as well satisfied with the clerk of a county, as one of a circuit court ; and at the day when the act was passed, either a district, quarter session, or county court deck, would have answered. It is evident the legislature intended some particular clerk ; and we conceive, that no person can read the previous part of the statute, and discover the words “ the clerk” and “ the court,” so frequently occurring, and the words “ where the judgment is rendered,” and “ whence the execution issued,” sometimes inserted and sometimes omitted, and doubt, that the clerk who had issued the execution, and who had the custody of the whole record, was designed. With this construction, the practice of the country has conformed, as far as it has fallen under the observation of this court. We, of course, decide, that this ground cannot be sustained, and that the schedule was returned to, and the summons issued from, the proper office.
3. Another ground sustained by the court below, was, that this proceeding by summons, was carried on *129 in the name of the sheriff, for the use of Williams, the plaintiff in the execution. On this point we likewise differ from the court below. The act of assembly directs, that “ the lands, tenements and hereditaments, and also, all goods and chattels whatsoever, in the schedule contained,” shall be vested in the sheriff of the county “ wherein they lie, or are found.” If these words, however, should not be deemed sufficient to vest the debts due to the insolvent, in the sheriff, the 29th section of the same act, l Litt. 549, directs the summons to issue, in the case of debts due, or chattels being in the possession of others, without saying in whose name the summons is to issue ; but it directs the judgment to be entered expressly, in the name of the sheriff, which shows that the previous process, for the purpose of obtaining that judgment, ought to be in conformity with the judgment. As the garnishee, who owed the debt, in this case, resided in Fayette, the proceedings were properly had in the name of the sheriff of Fayette, and this objection was erroneously sustained by the court below.
The summonses on such schedule, are properly issuable in the name of the sheriff of the country where the garnishee resides.
A summons requiring the garnishees to appear on a certain day before the court and answer on oath & say, whether they, or either of them, are indebted, as in the schedule alleged, is sufficiently certain.
Where the lands of femes coverts are sold under the authority of a private act of assembly, declaring that the purchase money shall pass and be held as it would have been, if the husband and wife had joined in the sale, the money belongs exclusively to the husband, and is subject to his debts.
*129 4. The summons was also decided to be defective in not requiring the garnishees to answer the sheriff, The summons requires them on a certain day, to appear before the court, and answer on oath, and whether they or either of them, was indebted as the schedule alleged. It may not he as formal as it could be; but still, it sufficiently apprises the garnishees what was required of them. The act does not prescribe the form of the summons. Of course, the substance of what was demanded, is all that is necessary, and the present one, we conceive, sufficiently answers that purpose, and on that ground it ought not to have been quashed by the court below.
5. The next question presented by the decision of the court below, is, whether the demand could be made subject to the debts of Buckner, or rather, whether it was such as was vested in the sheriff by the proceedings under execution. The item in the schedule of Buckner, to subject which, this summons issued, is thus expressed:
“ Five notes given by Wm. H. Richardson, to William Hubble, John Price and myself, as commissioners, appointed by a law of 1817, to sell a part of the real estate of the heirs of Richard M. Gano, deceased of *130 whom my wife is one. The said estate was sold, under said law, to said Richardson, for the sum of 10,000 dollars. The balance remaining unpaid, is five notes of $1428 57 cents each, to said heirs, of whom there are six in number. The securities on said notes are John M’Kinley and John C. Richardson, Sen. and the notes are deposited with the clerk of the Scott county court. I disclaim all interest in said notes, as I consider the same to belong to my wife, her real estate being sold therefor; and the commissioners are bound to lay the money out, when collected, in such manner as she may direct. I leave this point to be decided by the proper tribunal.”
When a garnishee states that he owes to the defendant in the execution a debt payable at a future day, judgment ought to be rendered for the debt, with a stay of execution until the day of payment.
*130 Richardson, the garnishee, stated, that one of the five notes named in the schedule, was paid, and there were only four due, at the time he deposed, of the same amount named in the schedule, and these four, when paid, were to go to the benefit of the heirs of Gano, one: of whom was the wife of Buckner. That the estate was sold and purchased by himself and John M’Kinley, who gave their notes with John C. Richardson their security, under the act of assembly entitled, “an act for the benefit of the heirs of Richard M. Gano.” Session Acts 1816, page 135. And each note was given in the following form :
“On or before the first day of February, 1822, we promise to pay to William Hubble, John Price and John C. Buckner, for the use of the heirs of Richard M. Gano, deceased, fourteen hundred and twenty eight dollars and fifty seven cents, value received. Witness our hands and seals, this 27th day of May, 1817.
(Signed,) Wm. H. RICHARDSON, (Seal)
J. M’KINLEY, (Seal.)
JOHN C. RICHARDSON, (Seal.)
The garnishee further stated, that besides these four notes, he owed Buckner nothing, and that these were not yet due.
6. The objection that these notes were not due, cannot be available against the execution. Sums not due, or chattels held as a bailment, we conceive, by the terms of the act, are vested in the sheriff, for the benefit of the creditor, as well as those which are due, or ought to be returned in future. If the creditor could not proceed, till the time the demand became *131 due, or the property bailed, was to be restored, it would be no difficult matter for the insolvent to avoid the effect of the execution upon them. The mode then, in which the rights of the garnishee, who is not yet bound to pay the money or restore the chattel, can be saved, is, by the court rendering judgment against him with a stay of the execution, till the period of payment or restoration arrives.
7. Neither do we suppose that the circumstance of these notes being made legally payable to the commissioners, for the use of the heirs, can screen them from the execution. The statute requires the debtor to make a schedule of “ his whole estate,” and does not except that part to which he holds a bare equity, or that held in trust for him. So far from it, that in the oath prescribed, the debtor is required to depose, that the schedule contains “ a full, just, true and perfect account and discovery, of all the estate, goods and effects, unto him in anywise belonging, and such debts as are due or owing unto him, or to any person in trust for him, and of all securities and contracts, whereby any money may hereafter become payable, or any benefit or advantage accrue to him or to his use, or any person in trust for him.” These expressions in the oath, shew what the schedule must contain, and all its contents are subjected by the act, to the debt due the plaintiff in the execution, so that even equitable titles and estates held, or debts due in trust, are included. The question then arises, was this money due for the real estate of the wife sold, subject to the demand ? The statute under which the sale took place, directs a sale of the estate on account of its indivisibility, and no where attempts to alter the rights of the femes covert. The money due for their interest, was to pass and be held as it would have been, had the husband and wife joined in the sale. Nor do we conceive it necessary, to enquire into the validity of the act, directing the sale. If it be invalid, it is competent for the parties to abide by it, and no one in this case is making a question of the validity of the sale. We must then decide the question, whether the demand is subject, without regard to any of the peculiarities that attend the sale? Before we do this we will first take notice of the expressions of Buckner in his schedule, which have been relied upon in the court below, as denying his *132 right to any of the money, and disclaiming any interest in it. We do not see any efficacy in his disclaimer in favor of his wife. She was incapable of taking it; and even if he had, by deed, made a settlement of that, or other estate, in trustees, for the use of the wife, it may well be asserted, that such grant could not resist the claims of creditors. The expressions, which he employs, that “the commissioners were bound; to lay the money out as she might direct,” means, either that the commissioners were under some obligation, different from what the act of assembly, or the law of the land imposed, to dispose of this fund for the use of his wife; or it must be the inference in law, which he attempts to draw, as prescribing the duty of the, commissioners. We cannot conceive, that these, his expressions, can be construed as stating the fact of any extrinsic obligation, different from what the law imposed, lying on the commissioners, He first disclaims the right to it, alleges an obligation on the commissioners, of whom he is one, and he could not be supposed to have made such contract with his wife, and if he had done so, in word only, it could not bind him ; he assigns the reason on which her right is founded, because it arose from the sale of her real estate ; and at last, he leaves the question to be decided by the proper authority. All which, shews, that what he says on this subject, is an inference of law only. This inference, however, is no more than the question before propounded — can this money due to commissioners as trustees, be subjected to the debt of the appellant? If Buckner and his wife, had joined in the sale, the money would be payable to, and recoverable by him, and he could appropriate it to his own use, regardless of the interest of his wife. Its having resulted from the sale of her lands, would not leave it to be still subject to the laws of real estate. It would, like other chattels, vest exclusively in the husband. And what is there to prevent this money passing in the same manner ?. It is made payable to the commissioners. But they are bare trustees without an interest. To Buckner they must deliver his share, and it is his. It is a debt, in the language of the act, “due to others in trust for him ;” a contract, whereby “ money may hereafter become payable, and benefit or advantage accrue to him.’’ It is, therefore, liable to the claim of the app *133 ellant ; is vested in the sheriff for him, and the court below erred in not subjecting the demand to the appellant’s debt, by a judgment against the garnishee.
The judgment of the court below must, therefore, be reversed, and the cause be remanded, with directions to that court to enter the judgment for Buckner’s proportion, being one sixth of each of these notes, till the whole demand of the appellant is discharged, if so much there be, still directing a stay of execution on the proportion of such instalments as may not be yet due.
As to the question of costs in this court, it was, on the objection and at the instance of Buckner, that the summons was unsuccessful in the court below, and of course, he must be subjected to the costs here. The garnishee appears to have made no resistance either there or here, and is censurable with no impropriety. As in total reversals we have a discretion over the costs by law, we conceive this is a proper case for its exercise, and therefore, no costs are given against the garnishee, Richardson, in this court.