## Lansdale's adm'rs. and heirs vs. Cox.

MOTION.

Error to the Nelson Circuit; PAUL I. BOOKER, Judge.

Case 91.

### Sureties. Contribution. Jurisdiction. Statutes. Motions. Ex'ors and heirs.

Chief Justice BIBB delivered the opinion of the court.

June 21.

RICHARD LANSDALE and JAMES COX were the sureties of Shanks, in an injunction bond to Summers, who sued Cox, the surviving obligor, and had judgment for $730 24, besides costs, which was paid by Cox's surety in a replevin bond, and afterwards paid by Cox to his surety. These proceedings were in the Nelson circuit court.

*Judgment against Cox, the survivor of Lansdale, his co-surety of Shanks, paid by Cox's sureties in a replevin bond, and*

Cox thereafter, upon motion against the heirs of

VOL. VII.                    3 A

<div style="margin-left: marginal notes">

LANSDALE's adm'rs &c. vs. Cox.

then by Cox to *his* sureties.

Cox has judgment against Shanks, the principal, but fails to recover the money.

Judgment *on motion* by Cox, against Lansdale's adm'ors and heirs.

Statute giving the motion.

Remedy against heirs &c. on the contract of their ancestors at common law.

</div>

Shanks, the principal, (stating that there was no executor or administrator of Shanks,) had judgment, and execution, upon which the sheriff made a small part of the judgment, (about $35 19,) and returned that he could find no estate whereof to satisfy the residue.

Cox then sued his motion against the heirs and administrators, jointly, of *his co-security*, Lansdale, for contribution, and recovered judgment; to which the defendants prosecute this writ of error.

The first question made in the court below, and now presented for the consideration of this court, is, will this motion be sustained, jointly, against the heirs and administrators, by a co-security?

This question depends upon the second section of the act of 1798; (2 Litt. Ed. laws Ken. p. 37; 2 Dig. 1116,) entitled "An act to empower sureties to recover damages in a summary way," which provides the remedy by motion in behalf of one security against his co-security, where the *principal obligor* hath become insolvent, and judgment hath been obtained against one or more of the securities jointly bound with the principal obligor or obligors, in any bond, bill, note, or obligation for the payment of money or other thing. The words of the statute which relate to this question are, "—it shall and may be lawful for the court before whom such judgment was or shall be obtained, upon motion of the party or parties against whom judgment hath been entered up as securities as aforesaid, to grant judgment and award execution against all and every of the obligors, and their legal representatives, for their, and each of their *respective shares* and proportions of the said debt."

The remedy by suit jointly against the personal representatives and heirs of a debtor, is unknown to the common law. If the heirs were expressly bound by the obligation, then a suit might be prosecuted against them upon the obligation of their ancestor. The executor or administrator is bound, whether expressly named or not, for the debt or duty of the testator or intestate, no matter whether

that debt or duty arise by specialty, or simple contract, express or implied.

But by our statute of 1792, for subjecting lands to sale by executions upon judgments; 1 Litt. 128, 1 Dig. p. 652,) it is declared, that "the same actions which will lie against executors or administrators, may be brought jointly against them and the heirs and devisees of the dead person, or both." Upon this statute the construction is, that the suit must be jointly against the executor or administrator and the heir, upon a contract where the heir was not bound by the common law. The common law remedies, against executors and administrators, and against the heirs, remain. But to come at the heirs upon a contract of the ancestor, for which they were not bound by the common law, the action upon this statute must be against the heirs, jointly with the executors or administrators.

The whole doctrine of contribution between securities originated with courts of equity. There is no express contract for contribution; the bonds, obligations, bills, or notes, created liabilities from the obligors to the obligees. The contribution between co-securities results from the maxim, that equality is equity. Proceeding on this, a surety is entitled to every remedy which the creditor has against the principal debtor; to stand in the place of the creditor; to enforce every security, and all means of payment; to have those securities transferred to him, though there was no stipulation for that. This right of a surety stands upon a principle of natural justice. The creditor may resort to principal, to either of the securities, for the whole, or to each for his proportion, and as he has that right, if he, from partiality to one surety, or for other cause, will not enforce it, the court of equity gives the same right to the other surety, and enables him to enforce it. Natural justice says that one surety having become so with other sureties, shall not have the whole debt thrown upon him by the choice of the creditor, in not resorting to remedies in his power, without having contribution from those who entered into the obligation equally with him. This obligation of co-

*Margin notes:*

LANSDALE's adm'rs &c. vs. Cox.

Actions given by the statute against the executors and heirs.

Remedy of one surety against another for contribution was anciently in equity only, but the common law courts now entertain the jurisdiction.

LANSDALE'S adm'rs &c. vs. Cox.

securities to contribute to each other, is not founded in contract between them, but stood upon a principle of equity, until that principle of equity had been so universally acknowledged, that courts of law, in modern times, have assumed jurisdiction. This jurisdiction of the courts of common law is based upon the idea, that the equitable principle had been so long and so generally acknowledged, and enforced, that persons, in placing themselves under circumstances to which it applies, may be supposed to act under the dominion of contract, implied from the universality of that principle. For a great length of time, equity exercised its jurisdiction exclusively and undividedly; the jurisdiction assumed by courts of law is, comparatively, of very modern date; and is attended with great difficulty where there are many sureties; though simple and easy enough where there are but two sureties, one of whom brings his action against the other upon the implied assumpsit for a moiety.

*Action at law by one surety against another for contribution, is on the implied simple contract, and not maintainable against the heirs only, but is given by the statute against them and the ex'rs and adm'rs jointly.*

The action at law, then, by one surety against his co-security, arises out of an implied undertaking, not by force of express contract, and consequently the heirs cannot have been expressly bound by the ancestor. So that the action at law, by one surety against the representatives of a deceased co-surety, must, by the principles of the common law, be against the executor or administrator. To reach the heirs in a suit at law, the remedy given by our statute, in such cases, must be jointly against the executors or administrators and heirs, not against the heirs alone. The remedy in equity by substitution of the co-security in place of the creditor, and so allowing the one surety his redress against his co-surety or co-sureties for contribution, still remains; the remedy at law, by a regular action jointly against the heirs and executors or administrators, by force and operation of the statute of 1792, may be pursued.

*Motion given by the statute in such case to one surety*

In tracing these remedies to their foundation, we have endeavored to find the true construction of the statute of 1778, which authorizes the remedy by motion by a surety against the representatives of

a deceased co-surety; and we have to acknowledge the difficulty which we have perceived and sensibly felt, in coming to a decisive opinion as to the sense in which the legislature used the term "legal representatives." If it be construed to mean the heirs only, then the executors and administrators are not to be reached by motion; if it means the executors or administrators, only, then the heirs are not to be reached in this form of proceeding; if it mean both heir and executor or administrator, then neither can be proceded against by motion, without joining the other. These statutory remedies by summary proceeding, in derogation of the common law and common right, have always been construed strictly, and never have been extended beyond the very expressions of the statute. Taking the expression, "legal representatives," in its more general signification, as synonymous with lawful, it may mean the lawful representatives of the real estate, or the lawful representatives of the personal estate of the deceased. As the undertaking between sureties to make contribution, is an implied assumpsit, which properly applies to, and devolves upon, the executor or administrator, but does not devolve upon the heir, it seems more proper to render this expression in the statute according to the subject matter; and to refer the word "representatives" to the executors and administrators who lawfully represent and are bound by the implied assumpsit of the deceased, than to the heirs.

This construction is favored by the history of this provision. It is copied from the statute of Virginia of 1786, chap. 15, under which motions have been sustained against executors and administrators of a deceased security, in favor of a security. It was the language used by the legislature of Virginia, where the heirs were not bound by the implied assumpsit of their ancestor, neither by common law nor by statute. It was in force before our separation from Virginia, and had received a meaning by use and common understanding. The act of 1798 was but a re-publication of a pre-existing law, and it is not fair to presume that the same words have undergone a change of signification by the mere fact of

*[Margin notes:]* LANSDALE's adm'rs &c. vs. COX.

for contribution against the other and his "legal representatives," lies against the ex'or or adm'r only, and does not embrace the heirs.

Such was the construction of the statute, of Virginia, of which the act of 1796 is but a re-enactment.

LANSDALE's adm'rs &c. vs. Cox.

reiteration. To confine the motion in this and such like cases to the executors or administrators, will make it more simple, convenient, and best suited to the habits of society. Its simplicity will render the remedy less liable to mistake in the *inception* or to error in its progress and consummation.

It will be adequate in a great majority of the cases; and where this remedy might prove inadequate, the action by regular process of law, according to the statute of 1792, against heirs and executors or administrators jointly, or by bill in equity, may be resorted to.

*Heirs in such cases may be subjected by the formal action or bill in equity.*

It seems to this court, that the remedy in the court below was misconceived; that the motion jointly against the heirs and administrators of one co-security did not lie in favor of the other co-surety, for contribution. It is therefore considered by this court, that the judgment of the circuit court be reversed, and the case be remanded to that court, with direction to quash the notice, and dismiss the motion with costs.

Plaintiffs in this court to recover costs.

*Mayes* and *Chapeze* for plaintiffs; *Hardin* and *Darby* for defendants.